IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

ENTERED

AUG 1 0 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

PAMELA MULLINS,

      Plaintiff,

v.                                                          Civil Action No.  3:04-0322

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

      Plaintiff Pamela Mullins appeals the Social Security Commissioner's (hereinafter

"Commissioner") final decision denying her application for supplemental security income

(hereinafter "SSI") based on disability, brought under 42 U.S.C. § 1383(c)(3).  For the reasons

set forth below, the Commissioner's decision is **AFFIRMED**.

## I

      Plaintiff filed her application for SSI on March 18, 2002, alleging disability commencing

November 23, 2001, as a consequence of seizures, bi-polar disorder, depression, anxiety,

pituitary hypertrophy, and osteoarthritis of the spine.  Her application was denied initially and

again upon reconsideration.  At her request, an administrative hearing was held on May 20, 2003.

On July 25, 2003, an administrative law judge (hereinafter "ALJ") found that she was not

disabled, and his decision became the Commissioner's final decision when the Appeals Council

denied her request for review.  Thereafter, the plaintiff filed this action seeking review of the

Commissioner's decision.

At the time of the ALJ's decision, the plaintiff was thirty years of age, had obtained an eighth-grade education and had work experience as a punch press operator, assembly line packer, chocolate factory assembler and metal parts assembler. In his decision, the ALJ determined from the objective medical evidence that the plaintiff had the following "severe" impairment,[1] as defined by the social security regulations: "chronic low back pain/mild degenerative disc disease of the lumbar spine; seizures controlled by medications; and multiple mental disorders (major depressive disorder, single episode, severe; post-traumatic stress disorder; borderline personality disorder)." (R. 21.) He also determined that she did not have an impairment or impairments which in combination met or equaled any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.[2] He further determined that she had the following residual functional capacity (hereinafter "RFC"):

> The claimant has the residual functional capacity to lift a maximum of 50 pounds occasionally and 25 pounds frequently. She can stand/walk six hours out of an eight-hour workday, and sit six hours out of an eight-hour workday. She should not perform repetitive bending, turning or twisting. She should never climb ladders or ropes and she should avoid unprotected heights and extreme heat/cold. She is moderately limited in ability to maintain attention/concentration for extended periods and sustain an ordinary routine without supervision. However, the claimant retains the mental capacity to understand and follow a full range of work-related activities with initial close supervision.

(R. 21.) On the basis of this determination, he found that she was able to perform her past relevant work as a punch press operator, assembly line packer of Q-tips, chocolate factory

---

[1] A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activity. 20 C.F.R. § 416.921(a).

[2] 20 C.F.R. Pt. 404, Subpt. P., App. 1.

assembler, and metal parts assembler.

Additional facts will be introduced as they relate to plaintiff's arguments for relief.

## II

Under the Social Security Act (hereinafter "Act"), the Court is required to uphold the Commissioner's decision if the decision is supported by substantial evidence and adheres to proper legal standards. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or his ALJ, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), and "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner or his ALJ]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issues before the Court are whether the ALJ's decision is supported by substantial evidence that plaintiff is not disabled within the meaning of the Act and whether the decision is based on the correct application of the relevant law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp. 2000). The Commissioner has developed a five-step procedure for making this determination. The first step requires consideration of whether the claimant is engaged in substantial gainful activity. If so, the claimant is found not disabled. If not, the second step requires a finding of whether there is a "severe" impairment. If not, the claimant is found not disabled. If so, the third step calls for an analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[3] If so, the claimant is found disabled without further analysis. If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work. If not, the claimant is found not disabled. If so, the burden of production shifts to the Commissioner for the final step.[4] In the fifth step, the Commissioner must demonstrate that the claimant can do other work. If the Commissioner satisfies this burden, benefits are denied. Otherwise, the claimant is found disabled, and benefits are awarded. 20 C.F.R. § 416.920.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since filing her application for benefits and that she has severe impairments. They disagree, however, on whether she satisfies a listing in Appendix 1, Subpart P, Regulation No. 4, on whether she is able to perform her past relevant work and whether her impairments prevent her from performing any work. Hence, the plaintiff has appealed to this Court and seeks to have the Commissioner's decision reversed.

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[4] *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

### III

Plaintiff has submitted three grounds in support of her motion for judgment on the pleadings. She alleges that the ALJ failed to properly evaluate her credibility, that the ALJ ignored her treating doctor's opinion and that the ALJ failed to consider the combined impact her impairments have on her ability to perform her past relevant work. The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence and adheres to the law. The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

### A

The plaintiff's first argument for a reversal of the Commissioner's decision is that the medical evidence in the record and her testimony prove that she is disabled. In support of this assertion, she points to the medical evidence from James Medling, Ph. D., Scott VanFossen, PA-C., and Stephen Nutter, M.D.

In assessing credibility, it is the ALJ's responsibility, not the court's, to weigh and resolve conflicts in the evidence. Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456. *See also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

In his decision, the ALJ provides the following explanation for his credibility finding:

> I find the claimant's credibility to be poor. The claimant reported to the medical personnel at St. Mary's Hospital in December 2001 that her husband had kicked her in the back (Exhibit 5F). However, she reported to Dr. Nutter in October 2002 that she injured her back and neck when her husband threw her against the wall and punched her in the back and head (Exhibit 14F). Dr. Nutter observed the claimant walked with a cane at the time of the consultive examination (Exhibit 14F). However, he noted the claimant could ambulate

without it and it was not medically necessary (Exhibit 14F). Dr. Nutter observed the claimant cried out with extreme pain with range of motion testing, a sign of symptom magnification (Exhibit 14F). However, during examination, the claimant, with her knees slightly bent, stated "this is as far as I am going or I won't get up"; yet, after Dr. Nutter left the room and reentered, she was observed to be squatting to pick up her pill bottles (Exhibit 14F). Further, she was able to lift her hips 120 degrees to put her shoes on without loud exclamations, moaning, or crying at the end of the examination (Exhibit 14F). The claimant testified with complaints of low back pain that is constant, throbbing and burning. Yet, in July 2002, she reported to Mr. VanFossen, PA-C, that even though she gets occasional numbness in her left arm, her TENS unit "is wonderful" (Exhibit 10F, page 3). The TENS unit has "really helped her back tremendously and states that she is only using it in the morning now" (Exhibit 10F, page 3). The claimant telephoned Mr. VanFossen's office on April 23, 2002 requesting the phone number for Holzer Clinic so that she could schedule a follow-up appointment (Exhibit 10F, page7). However, it was reported to Mr. VanFossen that the claimant was a "no show" (Exhibit 10F, page7). The claimant testified at the hearing that her seizures are controlled with medication. However, the claimant reported to Mr. VanFossen that she quit taking Dilantin on her own, and laboratory testing showed the claimant's Dilantin levels were not at a therapeutic level, inferring that she was not always compliant (Exhibit 14F). Given all of the above, the undersigned concludes that the claimant's allegations of chronic low back pain/mild degenerative disc disease of the lumbar spine; seizures controlled by medications; and multiple mental disorders (major depressive disorder, single episode, severe; post-traumatic stress disorder; borderline personality disorder), are deemed excessive, not fully credible and are treated accordingly.

As to the claimant's functional capacity, the claimant reported to Dr. Nutter that she could only walk 10 to 15 feet on flat ground before she experienced shortness of breath (Exhibit 14F). There is no evidence that any treating physician has limited the claimant's ability to perform work activity. The internist consultative examiner gave no limitations (Exhibit 14F). The State Agency medical consultants limited the claimant to lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing/walking six hours out of an eight-hour workday; and sitting six hours out of an eight-hour workday (Exhibit 8F, 15F). The claimant should not perform repetitive bending, turning or twisting and she should never climb ladders or ropes (Exhibit 8F, 15F). Because of the claimant's history of asthma, she should avoid unprotected heights and extremes of heat/cold (Exhibit 8F, 15F). In light of MRI and x-ray evidence of mild degenerative disc disease/chronic low back pain and seizure disorder, I find the State Agency medical consultant's limitations are reasonable. Therefore, I accept the State Agency's findings.

I also find the claimant has limitations when considering her multiple
mental impairments. Although no treating physician limited the claimant's ability
to perform work activity, Ms. Perdue observed that the claimant's concentration
was markedly deficient (Exhibit 11F). Her immediate memory was moderately
deficient (Exhibit 11F). Her recent memory was markedly deficient (Exhibit
11F). The State Agency medical consultant's found the claimant would be
moderately limited in ability to maintain attention and concentration for extended
periods and to sustain an ordinary routine without special supervision (Exhibit
13F). In reviewing the medical evidence of record, I find the claimant would be
restricted by major depressive disorder, single episode, severe; post-traumatic
stress disorder; and borderline personality disorder. Therefore, I accept the State
Agency medical consultant's limitations (Exhibit 13F). In addition, I also find the
claimant would be moderately limited in ability to sustain an ordinary routine
without supervision. However, I also find the claimant retains the mental capacity
to understand and follow a full range of work-related activities with initial close
supervision.

(R. 18-19.) It is clear from the above excerpt that the ALJ, in accordance with *Hammond*, did

support his credibility finding. Moreover, the Court has reviewed plaintiff's entire record with

particular attention to the exhibits from Dr. Nutter, Mr. VanFossen and Dr. Medling.[5] The Court

cannot find any significant oversights or misinterpretations of the evidence concerning the ALJ's

credibility finding. The medical evidence simply does not support the degree of limitation she

claims. Moreover, there are several inconsistencies between her testimony and the medical

records such as testifying at the administrative hearing that she suffers from seizures everyday

and reporting to Mr. VanFossen that she had not had any seizures while on Dilantin (R. 187);

---

[5]Dr. Medling's opinion, dated August 29, 2000, that the plaintiff was "temporarily and
totally disabled from all forms of gainful employment" was rendered a year prior to plaintiff's
alleged "on set" date of disability. (R. 114.) Thus, the opinion provides very little support
concerning her condition during the relevant time period, especially in light of the fact that she
did not seek treatment for her alleged mental impairments from November 23, 2001 (the alleged
"on set" date of disability) to June 12, 2002 (the date she sought treatment at Prestera).
Moreover, on June 20, 2002, plaintiff reported to Mr. VanFossen that she was feeling much
better after being admitted to the crisis unit at Prestera and that medication and counseling were
helping. (R. 190.)

testifying that she had severe back pain and reporting to Mr. VanFossen that the TENS unit

relieved her pain; testifying that she drops things and Dr. Nutter's findings that she could pick up

coins and that her grip strength was normal; and, reporting to Ms. Perdue that her concentration

was poor and reporting that she was able to watch television all day. In addition, while

examining the plaintiff, Dr. Nutter found that she exhibited symptom magnification. Finally, the

Court notes that the ALJ did not ignore the plaintiff's complaints because he did reduce the

plaintiff's RFC to medium work with moderately limited ability to maintain concentration.

Thus, the Court finds that substantial evidence supports the ALJ's finding concerning plaintiff's

credibility. *See Hays*, 907 F.2d at 1456.

## B

Next, the plaintiff argues that the ALJ improperly rejected the opinion of her treating

psychologist, James Medling, Ph. D, and that Dr. Medling's findings translate to a finding of

disability under Listings 12.04 and/or 12.06. Dr. Medling rendered the following opinion on

August 29, 2000 to Martha H. Krebs:

> I am responding to your letter of 8-23-00. At your request I have reviewed
> Dr. Schubert's 5-18-00 Psychiatric Evaluation Report. I also interviewed Pam on
> 8-28-00 specifically for her complaints of Posttraumatic Stress and Major
> Depression. It is my opinion that Dr. Schuberts diagnostic formulations and
> conclusions are incorrect and in error. Pam continues to meet DSM criteria for
> both conditions. Furthermore the severity of her complaints renders her
> temporarily and totally disabled from all forms of gainful employment.
>
> Dr. Schubert is correct in asserting that Pam meets Criteria A, B, and D for
> PTSD. However she meets five symptoms for Criteria C (three or more required).
> She does in fact avoid people, places and activities that remind her of her trauma.
> Pam has grown increasing avoidant of people feeling they are staring at her
> missing finger which immediately reminds her of her injury. She is also unable to
> work in factories for similar reasons. Pam also reports feelings of detachment and
> estrangement from others as noted above. She shows a restricted range of affect

feelings that her "spirit has been ripped out of her" referring to her feelings and her emotional life in general. She feels that her future plans will not materialize. While Dr. Schubert states that she does have interest and pleasure in life the criteria for PTSD, and major depression, is not the absence of interest as he would have the reader believe but a "***markedly diminished interest in pleasurable activities***" which Pam does in fact experience. She also does in fact avoid conversations, thoughts, and feelings about her injury but I will not belabor this point as she meets five symptoms for Criteria C. Thus she meets diagnostic criteria for PTSD.

Pam was also administered the Posttraumatic Stress Diagnostic Scale which confirmed the diagnosis of PTSD, placed her symptoms severity rating as Severe and her Level of impairment as Severe. There is little doubt that she continues to present with marked to extreme impairments as a result of this condition. Please see enclosed report.

With respect to her complaints of Major Depression Pam has been seen in weekly to biweekly visits by the undersigned with her most recent visit occurring on 8-28-00. She cries though most of each visit. Her affect is sad and her mood decidedly depressed. She reports daily feelings of depression. While she does report an occasional "good day" this refers not to the absence of depression as Dr. Schubert would have the reader believe but a lifting of her severely depressive mood to one of moderate depression. Dr. Schubert may also be interested to learn that depressed people can smile and laugh and are not consumed with a completely depressed mood twenty four hours of the day. Again criteria 2 of this condition references "markedly diminished interest or pleasure in all or almost all activities most of the day" as opposed to the complete absence of pleasure as Dr Schubert would have the reader believe. While Dr Schubert references her laughter on several occasions he fails to inform the reader if her laughter was appropriate or inappropriate to the topic discussed. Was the laughter scarastic [sic] or an expression of facetiousness? He does report her mood to be "liable" which would suggest the above.

Pam's appetite has been significantly reduced with a subsequent 20 lb. weight loss over the past two months. Insomnia is present along with feelings of guilt, worthlessness and difficulties with thinking, decision making and concentration. She entertains thoughts of death which satisfies all necessary conditions to make a diagnosis of Major Depression, Severe.

This having been said it remains my opinion that Pam is temporarily and totally disabled from all forms of gainful employment. Despite the seriousness of her symptoms she has been through a serious trauma and is making progress in treatment. She is not judged to have reached a state of MMI for her complaints of

Major Depression and PTSD.

(R. 114-15.)

The disability decision is reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). Moreover, an ALJ's determination as to the weight to be assigned to a medical opinion cannot be disturbed without some indication that the ALJ has "dredged up specious inconsistencies" or has failed to provide a good reason for the weight afforded a particular opinion. *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992), *see also* 20 C.F.R. § 416.927(d). In *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), the Fourth Circuit affirmed that a treating physician's opinion on the issue of disability is not controlling. In *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996), the court stated that the regulations give a treating doctor's opinion controlling weight with respect to the nature and severity of the impairment if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. The court further stated: "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*

When a treating doctor's opinion is not given controlling weight, however, the following factors should be used to determine the opinion's weight. First, the more evidence the physician presents to support his opinion, particularly medical signs and laboratory findings, the more weight is given to the opinion. Well-reasoned explanations are also given more weight,[6] and the more consistent a treating doctor's opinion is with the record as a whole the more weight

---

[6]20 C.F.R. § 416.927(d)(3).

afforded to his opinion.[7]  Finally, a specialist's opinion will be given more weight than that from a nonspecialist.[8]

In his decision, the ALJ provided the following evaluation of Dr. Medling's opinion:

> In so finding, I must reject the statement of James Medling, Ph. D. that the severity of the claimant's "complaints renders her temporarily and totally disabled from all forms of gainful employment" (Exhibit 3F).  First, I note that the ultimate decision of disability is one to be decided by the Social Security Administration, not that of a physician (20 CFR 416.927(e)).  Secondly, there are no supporting records.  Thirdly, I observed that treatment records elsewhere in the file reflect only mild clinical signs (Exhibit 5F, 6F).  Fourth, the evidence suggests that the claimant's complaints of severe pain and mental problems are exaggerated and not fully credible.  Given all the above, I must reject this conclusion as unfounded.

(R. 19.)

Dr. Medling's opinion is well-reasoned.  Unfortunately, however, Dr. Medling's opinion was rendered one year prior to plaintiff's alleged "on set" date of disability, and his conclusions concerning her mental status, at that time, are not supported by the progress notes.  While it appears that Dr. Medling, on June 8, 1998, found that the plaintiff suffered from post-traumatic stress disorder (hereinafter "PTSD") and depression as a direct result of her March 17, 1998 work injury and that both diagnoses were confirmed by tests at that time.  The progress notes from June 15, 1998 to August 28, 2000, on the other hand, indicate that her symptoms of depression and PTSD had improved over time, and there is nothing in Dr. Medling's supporting documents indicating that he retested the plaintiff to confirm his opinion.  Thus, Dr. Medling's opinion provides very little support that plaintiff's mental condition, during the time period at issue in this action, rendered her disabled or satisfied Listings 12.04 or 12.06, especially in light

[7] 20 C.F.R. § 416.927(d)(4).

[8] 20 C.F.R. § 416.927(d)(5).

of the fact she did not seek treatment for her PTSD and depression for the two years subsequent to his opinion. Moreover, on June 20, 2002, plaintiff reported to Mr. VanFossen that she was feeling much better after being admitted to the crisis unit at Prestera and that medication and counseling were helping. Finally, the Court questions the validity of the findings of Penny O. Perduc, M.A. It appears that during the examination, plaintiff's child was crying and causing a distraction. Thus, it is difficult to conclude that plaintiff's memory and concentration are as impaired as indicated in Ms. Perdue's evaluation. Moreover, despite the limitations caused by her PTSD and depression, the plaintiff is able to run a household and to care for her two children, both of tender years, as well as socially interact with her family and a boyfriend. Based on the foregoing, and as the ALJ has not dredged up any specious inconsistencies and has provided good reasons for the weight he assigned Dr. Medling's opinion, the Court holds that substantial evidence supports the ALJ's finding concerning Dr. Medling's opinion as well as the ALJ's implicit finding that Dr. Medling's findings did not translate to a finding of disability under Listings 12.04 and/or 12.06 during the relevant time period. Accordingly, this ground for judgment on the pleadings is overruled.

## C

Next, the plaintiff argues that the ALJ failed to properly consider the combined impact of her impairments on her ability to perform her previous relevant work.

The Fourth Circuit has held that "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairments if considered separately' would be sufficiently severe." Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) (quoting 42 U.S.C.A. § 432(d)(2)(c) (1982 and Supp. 1988)).

After reviewing the ALJ's decision and the testimony at the administrative hearing as well as the medical evidence in the record, the Court rejects plaintiff's contention. The ALJ's RFC finding takes into account plaintiff's mental disorders, back pain and seizure disorder. Thus, the ALJ considered the combined effect of the impairments as established by the evidence. Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's decision.

IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be **GRANTED** and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:

ROBERT J. STAKER
Senior United States District Judge